A05A0084. BURNS v. THE STATE.
A05A0499. GRIFFIN v. THE STATE.
(618 SE2d 600)

JOHNSON, Presiding Judge.

In separate appeals from their criminal convictions, Derick Burns and Stanley Griffin challenge the trial court's refusal to allow Burns' attorney to withdraw from representing Burns based on a claim of conflict of interest, when Burns and Griffin were being represented in a joint trial by attorneys from the same public defender's office. While the better practice would have been to appoint outside counsel for one of the defendants upon counsel's request, we hold that, under the circumstances presented here, the trial court did not commit reversible error in denying Burns' request. Therefore, the convictions in both cases are affirmed.

Burns was charged with burglary, theft by receiving, and possession of methamphetamine. Griffin, his co-defendant, was charged with burglary, theft by receiving, possession of tools for the commission of crime, and obstruction of an officer. In their first joint trial, Burns was represented by Ken Driggs and Homer Robinson, both of whom were employed by the DeKalb County Public Defender's Office. Griffin was represented by William Hankins, also of the DeKalb County Public Defender's Office. During opening statements, Hankins told the jury not to consider "the bad things about Mr. Burns . . . that don't apply to [Griffin]. . . . Frankly, we don't care if you find Mr. Burns guilty or not." The defendants did not testify at trial. During closing, Griffin's attorney told the jury that it could "[f]ind [Burns] guilty of all three charges that he faces. . . . That's fine." The jury found Burns guilty of possession of methamphetamine, and Griffin guilty of obstruction of an officer. The jury was unable to reach a verdict as to the charges of burglary, theft by receiving and possession of tools for the commission of crime, so a mistrial was declared as to those charges.

A month later, a second joint trial was held on the remaining charges. Griffin was being represented again by Hankins, and Burns was being represented by Christopher Latham, another attorney from the DeKalb County Public Defender's Office. After the calendar

was called but before voir dire began, the trial court entertained pre-trial motions. Latham, who had not been involved in the first trial, informed the court that after becoming acquainted with the case, he realized that a conflict of interest existed in that he and Hankins were employed by the same office. Latham stated that at the prior trial each of the defense attorneys had pointed to the other defendant as the guilty person, and that they would likely do the same at this trial. When asked his position on the matter, Hankins said he was not raising the conflict issue because the attorneys had not shared information and he had not cross-examined the co-defendant at the earlier trial. The trial court stated that Latham had not shown a conflict of interest. The judge noted that the matter apparently had not been raised at the first trial because normally when the public defender is representing more than one defendant in a case, it is his practice to appoint private counsel to represent one of the defendants. The court inferred that the attorneys in the prior case must not have perceived any conflict of interest, because if they had, the court would have appointed private counsel immediately. The court denied counsel's motion to withdraw, then proceeded to trial.

During opening statements, counsel for Burns stated that "the state will attempt to link [Burns] to Mr. Griffin. They are going to do that because, as you see from the evidence, all of the evidence in this case points to Mr. Griffin. Mr. Griffin, as you will hear was in fact seen going inside of the house." Counsel for Burns told the jury to convict Griffin and then began to distinguish the facts against Griffin and Burns. He went on to state that the two men were not on the same team. Neither defendant testified at trial.

In closing argument, Griffin's attorney stated that none of the witnesses recognized Griffin, and that Burns was the one who spoke to the neighbors and was seen standing on the front porch of the burglarized home and going into and out of the burglarized home. He added that "[t]hey saw Mr. Burns in front of the house. That's who they saw," that "[n]obody has any doubt about Mr. Burns, and that they recognized him in court." Griffin's attorney posited: "could [Griffin] have been part of helping Mr. Burns burglarize this house?"

When Burns' attorney made his closing statement, he pointed to the lack of evidence of Burns' guilt, but said nothing which implicated Griffin.

This time, the jury found both men guilty of burglary and theft by receiving. The jury also found Griffin guilty of possession of tools for the commission of crime. The trial court entered judgments of conviction on the verdicts.

## Case No. A05A0084

1. Burns contends that he was denied effective assistance of counsel and that the trial court erred in denying his trial attorney's request to withdraw prior to the second trial. Burns argues that attorneys employed by the same firm operate as a single entity, and that where two attorneys from the same firm represent co-defendants with conflicting interests, a conflict of interest results. He urges that where, as here, defense counsel objected to the joint representation at trial but the trial court denied counsel's request to withdraw, reversal is automatic. Under the facts of this case however, reversal is not required.

The assistance of counsel that is guaranteed by the Sixth Amendment contemplates that the assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests.[1] Most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interest, should be granted.[2] An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.[3] Whenever a trial court improperly requires joint representation over timely objection, reversal is automatic.[4] Burns has not demonstrated that this automatic reversal rule applies in his case.

Burns does not point to any authority, and we have found none, in which the courts have treated conflict cases involving two attorneys from the same firm separately representing two co-defendants in the same manner as they treat cases involving one attorney representing multiple defendants. "Joint" or "dual" representation generally refers to those situations in which one attorney represents more than one defendant in a case.[5] The difference is significant, because the potential for an actual conflict of interest is greater in those cases in which multiple co-defendants are represented by a single attorney than when co-defendants are represented by different

---

[1] *Wilson v. State*, 257 Ga. 352 (359 SE2d 661) (1987).

[2] Id. at 353.

[3] Id.

[4] Id.

[5] See, e.g., *Woods v. State*, 275 Ga. 844, 845 (2) (573 SE2d 394) (2002); *Wilson*, supra; *Hamilton v. State*, 255 Ga. 468, 470 (2) (339 SE2d 707) (1986); *Rice v. State*, 226 Ga. App. 770, 773 (1) (487 SE2d 517) (1997); *Ward v. State*, 195 Ga. App. 166, 167 (1) (393 SE2d 21) (1990). Note that in cases in which the state seeks the death penalty, co-defendants must be provided with separate and independent counsel rather than counsel who are associated in practice together. *Redd v. State*, 264 Ga. 399, 400 (444 SE2d 776) (1994).

attorneys — even where the attorneys work in the same public defender's office.[6] Joint representation by the same office is not as potentially dangerous as joint representation by a single attorney.[7] Where two attorneys work in the same office, the duty of loyalty runs only to each attorney's client; the attorney is in no way being asked to serve two masters.[8] Each attorney is representing a different defendant, and he may or may not share any information or files related to the cases. In this case, counsel for Burns' co-defendant reported to the trial court that the attorneys had not shared information, that there had been no cross-examination of co-defendants, and that he perceived no conflict of interest.

The Supreme Court of Georgia has held that, unlike in the private sector where no partner or associate of a firm may represent a client with whom any of the other attorneys have a conflict of interest, an entire government office is not necessarily disqualified from a case due to the conflict of an individual attorney.[9] Instead, in cases involving government attorneys, we look to the individual attorney and consider whether there has been any direct or indirect participation in the case, or any discussion between the associates concerning matters relevant to the case.[10] For these reasons, the cases upon which Burns relies as providing for automatic reversal where the court required joint representation over objection are distinguishable from the instant cases.

We hold that, in the absence of any authority providing that reversal based on a conflict of interest is automatic in a case such as this (where two attorneys from the same public defender's office separately represent co-defendants in noncapital cases), Burns is required to show what an appellant is normally required to show when alleging that his counsel was ineffective due to a conflict of interest: he must prove that his counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.[11] By actual conflict, the law means more than the bare possibility that a conflict may have developed.[12] The conflict must be palpable and have a substantial basis in fact.[13] The representation must have deprived either defendant of the undivided

---

[6] See *United States v. Trevino*, 992 F2d 64, 66 (5th Cir. 1993).

[7] See *United States v. Munoz*, 23 Fed. Appx. 13, 15 (II) (1st Cir. 2001).

[8] Id.

[9] *Arnold v. State*, 253 Ga. App. 387, 389 (3) (559 SE2d 131) (2002).

[10] See *Frazier v. State*, 257 Ga. 690, 694 (9) (362 SE2d 351) (1987).

[11] See *Petty v. State*, 260 Ga. App. 38, 41 (2) (a) (579 SE2d 23) (2003); *Capers v. State*, 220 Ga. App. 869, 873-874 (2) (470 SE2d 887) (1996).

[12] *Petty*, supra.

[13] Id.

loyalty of counsel, i.e., counsel slighted one defendant to favor the other.[14] The premise of a defendant's claim that he was denied conflict-free assistance because of joint representation must be that his lawyer would have done something differently if there was no conflict.[15]

In this case, no conflict of interest actually developed. Burns has not shown that his attorney slighted him in favor of Griffin, that his lawyer was compelled to refrain from doing something because of competing interests, or that his attorney otherwise would have done anything differently had the public defender's office not also been representing Griffin.[16] Nor has he shown that any alleged conflict adversely affected his attorney's performance, such as where counsel is prevented from conducting a thorough and sifting cross-examination of a witness,[17] where counsel concentrated his efforts on representing the co-defendant, where counsel failed to pursue an alternative defense theory more favorable to one defendant which would have prejudiced a co-defendant, or where counsel pursued a more favorable plea bargain on behalf of one co-defendant in exchange for his testimony against the other defendant.[18] Burns simply has not shown that the fact that his attorney and Griffin's attorney worked in the same public defender's office adversely affected his attorney's performance in any way. Under the circumstances, he has not shown error in the trial court's ruling.

Nonetheless, while we hold that the law does not require automatic reversal where the trial court denies counsel's motion to withdraw based on the fact that two attorneys from the same public defender's office separately represent two co-defendants with possibly adverse interests,[19] we note that it is the better practice to grant such motions and assign outside counsel in those situations. Indeed, this is what the trial court noted that it does in the vast majority of such cases.

---

[14] *Lamb v. State*, 267 Ga. 41, 41-42 (1) (472 SE2d 683) (1996).

[15] *Woods*, supra.

[16] See generally *Ellis v. State*, 272 Ga. 763, 766 (2) (534 SE2d 414) (2000).

[17] See generally *Weeks v. State*, 190 Ga. App. 373, 374 (1) (378 SE2d 895) (1989).

[18] See, e.g., *Woods*, supra; see also *United States v. Munoz*, supra (potential conflict should have been inquired into where public defender's office represented co-defendants, and one defendant was willing to cooperate with prosecution and had provided information detrimental to co-defendant's interests).

[19] See *United States ex rel. Cole v. Lane*, 752 F2d 1210, 1217 (III), n. 8 (7th Cir. 1985) (public defender's office is not an entity sufficiently similar to a law firm to invoke a per se conflict of interest rule when two assistant public defenders separately represent co-defendants); *Reynolds v. Chapman*, 253 F3d 1337, 1343 (11th Cir. 2001) (conflict of interest *may* exist when public defender's office represents clients with adverse interests; defendant must demonstrate that potential conflict became actual conflict).

In *Cuyler v. Sullivan*,[20] the United States Supreme Court noted that a possible conflict inheres in almost every instance of multiple representation, that 70 percent of the public defender's offices surveyed reported a strong policy against undertaking multiple representation in criminal cases, and that 49 percent of the offices responding never undertake such representation. Actual conflict can readily be avoided through the hiring of independent counsel in cases such as these.[21]

### Case No. A05A0499

2. Griffin has likewise failed to demonstrate the existence of an actual conflict of interest. He has not shown that his attorney would have done anything differently to defend him had the same office not been representing both defendants, or that any conflict of interest impaired his attorney's performance or representation. Thus, reversal is not required in his case, either.[22]

3. Griffin also contends the trial court erred in not determining on the record that he knowingly waived any conflicts of interest stemming from the joint representation. Because Griffin has failed to meet his burden of demonstrating that an actual conflict of interest resulted from joint representation, this enumeration is rendered moot.

*Judgments affirmed. Ruffin, C. J., Smith, P. J., Miller and Bernes, JJ., concur. Blackburn, P. J., and Barnes, J., dissent.*

BARNES, Judge, dissenting.

Because I cannot agree with the majority that the trial court did not commit reversible error by denying Burns' request for his counsel to withdraw from the case, I must respectfully dissent. Assistance of counsel free from conflicts of interest is implicit in the concept of effective assistance of counsel. *Cates v. Superintendent, Indiana Youth Center*, 981 F2d 949, 953 (II) (B) (7th Cir. 1992).

Further, I would hold that joint representation by members of the same public defender's office is the same as joint or dual representation by a single attorney. Joint representation by attorneys in the same public defender's office is not more benign than joint representation by one private attorney or by a firm of private attorneys. Although the danger of an actual conflict of interest is obviously greater when only one attorney is providing joint representation because one attorney obviously cannot have separate knowledge of

---

[20] 446 U. S. 335, 346, n. 11 (100 SC 1708, 64 LE2d 333) (1980).

[21] See *United States ex rel. Cole v. Lane*, supra.

[22] See generally *Barnes v. State*, 160 Ga. App. 232, 233 (286 SE2d 519) (1981).

the information gleaned from the clients, a danger exists within public defenders' offices that information could be inadvertently shared by staff as well as by the attorneys. In addition, even though the profit motive may not exist, the potential exists that loyalty to the office or the other attorneys might affect the representation given to the client. This is an unnecessary risk that should not be taken.

In another context, our Supreme Court held that "attorneys in a public defender's office are to be treated as members of a law firm" for asserting claims of ineffective assistance of counsel. *Ryan v. Thomas*, 261 Ga. 661, 662 (409 SE2d 507) (1991). I would extend that treatment to claims of conflicts of interest, and would extend that treatment particularly to those cases in which one of the defense counsel involved asserted that he had a conflict of interest. Those cases cited by the majority suggesting that a lower standard should be applicable to public attorneys generally concern disqualification of district attorneys' offices. Such offices, however, plainly do not have the same problems with the competing interests of individual clients; the district attorney has but one client: the State.

Indeed, the general rules practiced, apparently even by the trial court, preclude joint representation by attorneys from the public defender's office, and our rules of professional responsibility prohibit such representation. The decision not to hire outside counsel to represent one of the defendants is a highly questionable and unusual practice. *United States v. Lane*, 752 F2d 1210, 1217 (7th Cir. 1985).

Further, and most importantly, the trial court did not address this issue fully, and consequently the record is silent on the basis for counsel's statements. The procedures in Federal Court would not permit this silence.

> Because a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show the trial court that potential conflicts impermissibly imperil his right to a fair trial. But, unless the defendant objects and the trial court fails to afford such opportunity, a reviewing court cannot presume that the possibility of a conflict has resulted in ineffective assistance.

(Citations and punctuation omitted.) *Cates v. Superintendent, Indiana Youth Center*, supra, 981 F2d at 953 (II) (B). In effect, the majority opinion assumes that counsel's claims had no factual basis. I do not believe the law permits that assumption. Further, our Supreme Court recognized that, while vicarious disqualification of a government office is neither necessary nor wise, measures should be taken to prevent multiple government lawyers from participation in and

discussion of the case, directly or indirectly. *Frazier v. State*, 257 Ga. 690, 694 (9) (362 SE2d 351) (1987). Because the trial court conducted no investigation of the matter, other than expressing its concerns about the timing of the motion, we do not know what, if any, measures were taken to preserve client confidences. Although a hearing may not be constitutionally required whenever defendants are jointly represented, good practice demands that the trial court conduct an inquiry into the matter as soon as it is apparent that one attorney or one firm or one public defender's office is jointly representing multiple defendants. See, e.g., Federal Rule of Criminal Procedure 44 (c). If the trial court in this case had done so, we would not be presented with such an incomplete record on this crucial issue.

Contrary to the majority's conclusion, I find that an actual conflict of interest existed because the members of the same public defender's office represented both defendants and, even though neither co-defendant testified, each raised defenses asserting that the other defendant was the guilty party. This is more than a possibility of a conflict, and the trial judge was aware of the actual conflict of interest because he presided over the first trial of these defendants.

Our Supreme Court has held that

[a]s the court in *Holloway v. Arkansas*, 435 U. S. 475, 488 (98 SC 1173, 55 LE2d 426) (1978), noted, since the decision in *Glasser* [*v. United States*, 315 U. S. 60 (62 SC 457, 86 LE 680) (1942)], most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted. The attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial. Defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem. Finally, attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath. We find these considerations persuasive. Whenever a trial court improperly requires joint representation over timely objection reversal is automatic.

(Citations and punctuation omitted.) *Wilson v. State*, 257 Ga. 352, 353 (359 SE2d 661) (1987). In this case, Burns' counsel informed the court that the conflict existed and the court failed to investigate the matter properly. Consequently, I believe that reversal is required because

the trial court "failed either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." (Footnote omitted.) *Holloway v. Arkansas*, supra, 453 U. S. at 484.

Accordingly, as I would reverse both convictions, I must respectfully dissent.

I am authorized to state that Presiding Judge Blackburn joins in this dissent.

DECIDED JUNE 24, 2005 —
RECONSIDERATION DENIED JULY 28, 2005 — 

*Wystan B. Getz*, for appellant (case no. A05A0084).

*Mathis & Williams, Tony E. Mathis*, for appellant (case no. A05A0499).

*Jeffrey H. Brickman, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.

